Robert J. Malionek
Direct Dial: +1.212.906.1816
robert.malionek@lw.com

1271 Avenue of the Americas

Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |

# LATHAM&WATKINS LLP

November 21, 2025  **(VIA CM/ECF)**

The Honorable Paul A. Engelmayer
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Plata Capital Limited v. FTP Securities LLC, et al.*, No. 1:25-cv-02549 (S.D.N.Y.)

Dear Judge Engelmayer:

      On behalf of Defendants-Counterclaim-Plaintiffs Financial Technology Partners LP and FTP Securities LLC (collectively, "FT Partners"), we respectfully request that the Court compel Plaintiff-Counterclaim-Defendant Plata Capital Limited ("Plata") to produce unredacted emails, including one attachment, exchanged between Plata and the third-party minority investor with whom Plata was negotiating supposedly at arm's-length, and who Plata alleges actually "acquired" Plata through a "Company Sale." Examples are attached. FT Partners asks the Court to reject Plata's assertions that (1) such third-party communications constitute "attorney work product" and (2) it shared a "common interest" with its counterparty that precludes waiver of any privilege.

## I.   BACKGROUND

      This matter centers on whether Plata engineered a sham transaction to manufacture a "Company Sale" in an effort to terminate its Engagement Letter with its financial advisor, FT Partners. *See* ECF No. 23 ("Counterclaims") ¶¶ a–j. As part of FT Partners' engagement by Plata to raise capital from a new minority investor, FT Partners introduced Plata to North Haven Capital ("North Haven"), a company that holds itself out as engaging in minority investments. Following this introduction, Plata and North Haven excluded FT Partners from all subsequent discussions regarding a potential transaction. To make it appear as though a "Company Sale" had taken place, Plata worked with North Haven to form FinTech Acquisition Limited ("FAL HoldCo") which Plata would label its "acquirer." In reality, FAL HoldCo was a shell owned almost entirely by Plata's original shareholders to facilitate a third-party minority investment, and as a result, the share exchange with FAL HoldCo was merely a reorganization (not a Company Sale).

      The discovery thus far indicates that during North Haven's consideration of a minority investment in Plata, including due diligence and negotiations, Plata discussed manufacturing a "Company Sale" to try to rid Plata of its obligations under the Engagement Letter. This Letter Motion is focused on emails between Plata and North Haven during this period that have been improperly redacted by Plata on the basis of "common interest" and "attorney work product," as well as a "legal opinion" attached to one of these emails that Plata has withheld.

      **Exhibit A:** ███████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████

November 21, 2025
Page 2

LATHAM&WATKINS LLP

[redacted]

**Exhibit B:** [redacted]

It is no surprise that Plata is going to great lengths to conceal as much of the communications reflected in Exhibits A and B as it can. Even the *unredacted* portions confirm FT Partners' core theory: Plata structured the transaction in order to try, improperly, to terminate the Engagement Letter and avoid future fees. On their face, however, these emails are ordinary business communications between *potential counterparties* to a negotiation that were sent during North Haven's diligence of *Plata's* financial position and are thus not entitled to a privilege that only attaches where there is a reasonable expectation of litigation. The parties have met and conferred regarding these issues and have reached an impasse.

## II. THE SUBJECT COMMUNICATIONS ARE NOT ATTORNEY WORK PRODUCT

The attorney work product doctrine protects documents prepared "in anticipation of litigation," but not those created in "the ordinary course of business." *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 68 (S.D.N.Y. 2003). Courts consider whether the "purpose for [a document's] creation was not preparation for litigation, but furtherance of a business transaction." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995); *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2024 WL 4555881, at *4 (E.D.N.Y. 2024) (same). Here, the communications at issue concern [redacted]—*i.e.*, for precisely the counterclaims that FT Partners brings in this case. *See* Exs. A & B. Critically, these emails and [redacted] were sent during diligence in "furtherance of a business transaction," *i.e.*, to help convince North Haven to make a financial investment in Plata—and *not* because Plata was in fact

LATHAM&WATKINS LLP

preparing for litigation as that concept has been defined in the applicable case law. Indeed, these communications were sent in March 2024, roughly a year before Plata initiated this action, and are damning evidence of not only Plata's efforts to manufacture a sham transaction, but also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Such conversations—which happen in the midst of arm's-length diligence relating to a potential investment—are not protected by the work product doctrine. *See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2023 WL 315072, at *10 (S.D.N.Y. 2023) (stating that "[a] party's consideration of the possibility of litigation is insufficient to trigger the protection of the work product doctrine") (collecting cases) (cleaned up); *Bank Brussels*, 160 F.R.D. at 448 (same); *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 75 (S.D.N.Y. 2010) (holding a cease-and-desist letter was not an "affirmative step[] in anticipation of litigation").

Plata bears the burden of establishing that it reasonably anticipated litigation at that time, *see Monterey*, 2023 WL 315072, at *10, which it cannot do. For example, Plata refuses to say whether a litigation hold notice was in place when these emails were sent (which, if Plata truly anticipated litigation, it would have needed to set up), or whether the information was marked privileged. Instead, Plata relies on a non-disclosure agreement ("NDA") (**Exhibit C**), entered into between Plata and North Haven, as support for its position. Critically, though, the NDA only confirms the opposite, as it reflects a standard form between potential *counterparties* to a transaction. Indeed, it states, *inter alia*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The NDA underscores the ordinary transactional nature of these communications and refutes any claim of work product protection.

### III. THE COMMON INTEREST DOCTRINE IS NOT APPLICABLE

Plata also has asserted that sending these business communications to third-party North Haven did not waive any privilege, citing the "common interest" doctrine. For the same reasons as above—namely, in light of North Haven's status as an *adverse counterparty* doing financial and business diligence on a possible minority investment—this claim fails. At most, these communications reflect "a business strategy that happens to include a concern about litigation," which courts have routinely recognized as insufficient to invoke common interest privilege. *In re F.T.C.*, 2001 WL 396522, at *5 (S.D.N.Y. Apr. 19, 2001); *Bank Brussels*, 160 F.R.D. at 447 (S.D.N.Y. 1995) (same); *Monterey*, 2023 WL 315072, at *8 (same) (collecting cases). The NDA was a transactional document, not a common interest agreement. This is precisely the sort of abuse that courts protect against by narrowly applying the common interest doctrine. *See Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 629 (2016) ("[W]e do not perceive a need to extend the common interest doctrine to communications made in the absence of pending or anticipated litigation, and any benefits that may attend such an expansion of the doctrine are outweighed by the substantial loss of relevant evidence, as well as the potential for abuse.").

### IV. CONCLUSION

FT Partners respectfully requests an order requiring Plata to produce these materials (after an *in camera* review, if the Court deems appropriate) in unredacted form, including the "legal opinion," and to produce any other documents withheld on the same grounds.

**LATHAM & WATKINS** LLP

Respectfully submitted,

/s/ Robert J. Malionek

Robert J. Malionek
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200
robert.malionek@lw.com

Enclosures
cc: all counsel of record (via ECF) (with enclosures)

---

Per the Court's Individual Rule 2(C) governing discovery disputes, Plata's response to FT Partners' letter to compel unredacted production is due December 1, 2025. To assist in resolving this motion, the Court directs Plata to furnish the Court forthwith unredacted copies of the materials at dispute. FT Partners is to provide the Court with these materials by emailing them to EngelmayerNYSDChambers@nycourts.uscourts.gov.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 24, 2025
      New York, New York