UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PLATA CAPITAL LIMITED,

                Plaintiff-Counterclaim-Defendant,

    -v-

FINANCIAL TECHNOLOGY PARTNERS L.P. and FTP
SECURITIES LLC,

              Defendants-Counterclaim-Plaintiffs.

---

FINANCIAL TECHNOLOGY PARTNERS L.P. and FTP
SECURITIES LLC,

              Counterclaim-Plaintiffs,

    -v-

FINTECH ACQUISITION LIMITED,

              Counterclaim-Defendant.

---

25 Civ. 2549 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In April 2023, plaintiff Plata Capital Limited ("Plata") and defendants Financial Technology Partners LP and FTP Securities LLC (collectively, "FT Partners") entered into an agreement under which FT Partners would provide Plata investment banking and advisory services in exchange for commissions on financial transactions. Dkts. 1 ("Compl."), 1-1 ("Engagement Letter"). One year later, on April 23, 2024, Plata was acquired by Fintech Acquisition Limited ("FAL HoldCo"). Compl. ¶ 6.

In this action, Plata seeks declaratory relief to the effect that FAL HoldCo's acquisition terminated its obligation, under the Engagement Letter, to pay FT Partners fees. Id. ¶¶ 6, 8–10. FT Partners brings counterclaims based on the opposite premise. It contends that Plata's acquisition by FAL HoldCo was a sham—and fits within an exception in the Engagement Letter

1

for transactions undertaken to avoid paying fees due to FT Partners. Its counterclaims include ones for breach of contract and declaratory relief. Dkt. 23 at 18–64 ("Counterclaims").

Plata now moves to dismiss FT Partners' counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion in part and denies it in part.

## I.      Background

### A.      Factual Background

#### 1.      Parties

FT Partners is an investment bank. Compl. ¶ 1. Financial Technology Partners LP is a Delaware limited partnership with a principal place of business in California. Counterclaims ¶ t. FTP Securities LLC is a Delaware limited partnership with its principal place of business in California. *Id.* ¶ u.

Plata is a financial technology company incorporated in the United Kingdom with its principal place of business in the United Kingdom. *Id.* ¶ v; Compl. ¶ 13.

FAL HoldCo is a private company incorporated in the United Kingdom with its principal place of business in the United Kingdom. Counterclaims ¶ w.

#### 2.      The Engagement Letter

The Court assumes familiarity with this case and sets out here only the facts necessary to assess the pending motion. In brief, on April 20, 2023, Plata and FT Partners executed the Engagement Letter. Compl. ¶ 23. It set forth the services that FT Partners would perform with

respect to potential transactions,[1] the fees it would receive for its work, and the conditions under which the parties' relationship would terminate. Engagement Letter §§ 1–2, 6.

The Engagement Letter provided that FT Partners' obligations would cease following a "Company Sale." *Id.* § 6. A "Company Sale" was defined to entail (i) "the sale of all or at least 50% of the issued and outstanding equity securities of [Plata] to an acquirer" or (ii) "the transfer or loss of control of the board of directors (or other governing body) of the Company to an acquirer." *Id.* at 11 (defining terms). The Engagement Letter stated the following qualified as such a sale:

> [W]hether effected in one transaction or a series of transactions, any merger, consolidation, restructuring, reorganization, recapitalization, joint venture, exchange, or other transaction or analogous event involving (a) the sale of all or at least 50% of the issued and outstanding equity securities of the Company to an acquirer, (b) the transfer or loss of control of the board of directors (or other governing body) of the Company to an acquirer (c) the merger or combination of the Company with an acquirer, (d) an acquirer's acquisition of all or at least 50% of the assets, properties, revenue, income, or business of the Company, and/or (e) for the avoidance of doubt, any sale, merger, acquisition, or other business combination or similar transaction of any kind between the Company, or any affiliate of the Company, and a special purpose acquisition company, or an affiliate of a special purpose acquisition company  (a "SPAC Sale"). A Transaction resulting in the transfer of at least 50% of the Company's voting stock constitutes control and represents a completed Company Sale for purposes of determining when the full Transaction Fee is payable and is to be paid. Nevertheless, FT Partners' advisory efforts pursuant to this letter agreement will continue after control is transferred to assist the Company with a second step merger or similar transaction. For the avoidance of doubt, no Capital Raise shall be deemed to result in a Company Sale unless such transactions are used to effect an acquisition of at least 50% of the Company's capital stock or equivalents by a single purchaser (or single purchaser together with its affiliates or any other parties who are working together to effect an acquisition of the Company).

---

[1] These services included "reviewing and analyzing" potential transactions, "assisting" Plata in negotiating potential transactions, and "advising" Plata as it prepared for potential transactions. Engagement Letter § 1.

*Id.* Critical here, however, § 10 of the Engagement Letter provided that the parties' obligations would survive any "corporate reorganization," and remain binding on "[Plata] and any ultimate holding company or parent entity." *Id.* § 10. Were Plata to "undertake any corporate reorganization or similar transaction to avoid paying a Transaction Fee that would otherwise be due hereunder," such would not constitute a "Company Sale." *Id.*

Between April 2023 and June 2024, FT Partners' employees worked some "3,700 hours on matters relating to Plata" and "participated in 65 calls introducing Plata management to potential advisors." Counterclaims ¶ qq. One investor FT Partners identified was North Haven, a fund associated with global financial services provider Morgan Stanley ("North Haven"). *Id.* ¶¶ g, tt.

### 3.    The North Haven "Sale"

On April 26, 2024, Plata leadership notified FT Partners that it had been "sold" to North Haven through a transaction facilitated by FAL HoldCo. *Id.* ¶ ddd. FT Partners then requested a "complete set of final documents" from the transaction. *Id.* ¶ ggg. On May 8, 2024, Plata supplied FT Partners with a share exchange agreement, dated April 23, 2024, documenting a purchase of the "entire issued share capital of [Plata]" by FAL HoldCo. *Id.* ¶¶ hhh–iii.

On May 17, 2024, FT Partners asked Plata for further information regarding the FAL HoldCo transaction, including a capitalization table to enable it to assess whether the April 2024 transaction had been a "sale" or a merely a corporate "reorganization." *Id.* ¶ jjj. FT Partners noted the exception in § 10 of the Engagement Letter for "corporate reorganization[s]." *Id.* On June 11, 2024, Plata supplied FT Partners with a capitalization table, which stated that 50.05% of its capital was held by two "new" owners: North Haven and a "redacted investor group." *Id.* at 36–37 (cleaned up) (reflecting that North Haven owned 27.04% and redacted investor group owned 23.01% of post-transaction capital). Between June 2024 and August 2024, FT Partners

4

continued to pursue information from Plata as to the identities of the persons in the "redacted investor group." *Id.* ¶¶ lll–mmm.

On August 8, 2024, in response, Plata provided a second capitalization table, stating that 50.61% of its capital was now held by North Haven and "redacted investor group." *Id.* at 38 (cleaned up) (reflecting that North Haven now owned 32.07% and redacted investor group now owned 18.54% of post-transaction capital). Thus, the share of post-transaction capital held by North Haven had increased by approximately 5%, and the share held by the "redacted investor group" had decreased by approximately 4.5%. Plata continued not to identify the members of the redacted investor group. *Id.* FT Partners renewed its request for these identities, stating such was highly relevant to "any analysis on ownership and attribution." *Id.* ¶ ooo (quoting August 26, 2024 communication). Between August 2024 and October 2024, FT Partners continued to request, and Plata continued to decline to provide, information regarding the FAL HoldCo transaction. *Id.* ¶¶ ppp–qqq.

On October 2, 2024, Plata told FT Partners that it did not believe it was required to supply further information to FT Partners. *Id.* ¶ qqq. Nonetheless, it stated that it would pay a "transaction fee" for the North Haven acquisition if "FT Partners would sign the release confirming that the Engagement Letter was terminated." *Id.*

**B.    Procedural History**

On March 27, 2025, Plata filed a complaint against FT Partners, seeking a declaration that its obligations under the Engagement Letter had ceased as of April 23, 2024. Dkt. 1.

On May 14, 2025, FT Partners answered and brought eight counterclaims against Plata and FAL HoldCo. Counterclaim One sought a declaration that Plata was still bound by the Engagement Letter. Dkt. 23 at 54–55. Counterclaims Two through Seven claimed contract

breaches, based on distinct provisions of the Engagement Letter. *Id*. at 55–60. Counterclaim Eight claimed a breach of the implied covenant of good faith and fair dealing. *Id*. at 61–62.

On June 25, 2025, Plata moved to dismiss three counterclaims under Federal Rule of Civil Procedure 12(b)(6). Dkts. 33, 34 ("Motion"). These were: (1) Counterclaim One, the declaratory judgment counterclaim, which Plata argued was duplicative of the breach of contract counterclaims; (2) Counterclaim Six, which claimed a contract breach based on Plata's failure to advance FT Partners for its legal expenses as incurred, which Plata argued was based on an errant reading of the Engagement Letter; and (3) Counterclaim Eight, the implied covenant counterclaim, which Plata contended was duplicative of the breach of contract counterclaims. On June 26, 2026, the Court issued an order requiring FT Partners either to amend its counterclaims or oppose Plata's motion by July 16, 2025 and stating that "[n]o further opportunities to amend will ordinarily be granted." Dkt. 36. On August 6, 2025, FT Partners, declining to amend, opposed Plata's motion. Dkt. 42 ("FT Partners' Br."). On August 27, 2025, Plata replied. Dkt. 44 ("Plata Reply Br.").[2]

## II.    Applicable Legal Standards Governing Motions to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

---

[2] On September 10, 2025, FAL HoldCo moved to dismiss counterclaims against it, including based on the asserted lack of personal jurisdiction. Dkts. 51–52. On October 3, 2025, FT Partners requested leave, before filing its opposition to FAL HoldCo's motion, to conduct jurisdictional discovery. Dkt. 61. On October 9, 2025, FAL HoldCo opposed the discovery application. Dkt. 63. On October 17, 2025, the Court ordered FAL HoldCo to promptly comply with FT Partners' jurisdictional discovery requests, ordering such to be completed within four weeks, and extending the briefing schedule on FAL HoldCo's motion by four weeks. Dkt. 65. On November 6, 2025 and January 12, 2026, the parties requested, and the Court granted, modifications to the briefing schedule such that FAL HoldCo's motion will be fully briefed by April 10, 2026. Dkts. 72, 88.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. These same standards apply to a motion to dismiss a counterclaim. *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020); *Ebel v. G/O Media, Inc.*, No. 20 Civ. 7483 (PAE), 2021 WL 2037867, at *4 (S.D.N.Y. May 21, 2021).

## III.    Discussion

### A.    Counterclaim Six: Advancement of Attorneys' Fees

FT Partners' sixth counterclaim is based on an advancement and indemnification provision in Annex A of the Engagement Letter under which Plata agreed to reimburse FT Partners for legal fees and expenses "in connection with any actual or threatened action, proceeding, claim, or investigation brought by or against any person . . . . which FT Partners incurs in connection with or as a result of either engagement by [Plata] or any matter referred to in this letter agreement." Engagement Letter at 10. The provision states that it applies "whether or not FT Partners is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of" Plata. *Id.* FT Partners claims that Plata has breached that provision by failing to advance litigation expenses in this case. Plata counters that the provision does not apply to suits between it and FT Partners, but only in suits involving third parties, and that, in any event, it applies only to recoveries by the prevailing party. Plata Br. at 10–14.

Under New York law, a court should not read an indemnification agreement to cover fees incurred in disputes among the contracting parties "unless the intention to do so is *unmistakably clear* from the language of the promise." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989) (emphasis added) (citations omitted). As Judge Vyskocil has put the point, under the *Hooper* rule, the "default presumption" is that an indemnification agreement covers "claims associated with *third-party suits*, rather than contractual damages or losses from litigation between the contracting parties themselves." *Zama Cap. Advisors LP v. Universal Ent. Corp.*, No. 24 Civ. 1577, 2025 WL 968783, at *19 (S.D.N.Y. Mar. 31, 2025) (emphasis added). And although "[i]ndemnification and advancement of legal fees are two distinct corporate obligations," *Crossroads ABL LLC v. Canaras Cap. Mgmt., LLC*, 963 N.Y.S.2d 645, 646–47 (1st Dep't 2013), *Hooper*'s rule of construction applies equally to provisions in indemnification clauses covering fee advancement, *see, e.g., In re Platinum-Beechwood Litig.*, Nos. 18 Civ. 6658, 19 Civ. 3211, 2019 WL 2093914, at *3–4 (S.D.N.Y. May 13, 2019) (applying *Hooper* rule in resolving motion for advancement of litigation expenses); *Gramercy Advisors, LLC v. Coe*, No. 13 Civ. 9069, 2015 WL 13780603, at *2–3 (S.D.N.Y. Apr. 17, 2015) (same); *Happy Kids, Inc. v. Glasgow*, No. 1 Civ. 6434, 2002 WL 72937, at *2–3 (S.D.N.Y. Jan. 17, 2002) (same).

Consistent with this presumption, where contractual language did not evince that the contracting parties' intended indemnification in suits between them, "courts have determined that such expenses are not indemnified in contexts where third-party claims are possible." *CBS Corp. v. Eaton Corp.*, No. 7 Civ. 11344, 2010 WL 1375169, at *5 n.9 (S.D.N.Y. Mar. 30, 2010). In particular, where third party claims are anticipatable, courts presume against advancing fees as to "non-third-party" claims, *i.e.*, intra-party disputes. *See, e.g. Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F. Supp. 203, 218–19 (S.D.N.Y. 1997) (indemnification clause does not

8

cover costs of litigation between parties because it is not "unmistakably clear" that they are covered, and provision "can easily be read to protect [party] from claims to its rights and interests by third parties"); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996) (intent to advance attorneys' fees in breach of contract case requires "unmistakably clear" provision in language of the contract); *Coastal Power Int'l, Ltd. v. Transcon. Capital Corp.*, 10 F. Supp. 2d 345, 371 (S.D.N.Y. 1998) (although indemnification clause could plausibly extend to costs of litigation by contracting parties, absent "language clearly evidencing an intention that the loser in a suit for breach of the [contract] was intended to pay the winner's attorneys' fees," those fees are not indemnified).

Decisions in this District have long been in accord. They have held indemnification clauses not to cover claims between the contracting parties even in the face of contractual text whose breadth could have been read otherwise. In *Sequa Corp. v. Gelmin*, for example, Judge Haight found that, under the *Hooper* rule, agreement text that covered "'any and all' claims 'of any kind and nature'" in fact "refer[red] solely to the type of claims that are covered, not the identification of parties who may assert those claims." 851 F. Supp. 106, 110 (S.D.N.Y. 1994) (cleaned up). Only if "the claims covered refer 'exclusively' or 'unequivocally' to claims between the parties," he stated, "[may] a Court . . . . interpret an indemnification agreement to include such claims. If not, then a court must find the agreement to be lacking evidence of the required intent." *Id.* at 110–11 (citation omitted). Similarly, in *Bourne Co. v. MPL Communications, Inc.*, Judge Sprizzo rejected the argument that "language in the Agreement which refers to breach of covenants, warranties or representations in the contract can only refer to claims between the parties." 751 F. Supp. 55, 57 (S.D.N.Y. 1990). He found that "the parties' intentions to provide indemnification for claims between [them was] not 'unmistakably clear'

9

from the language of the promise." *Id.* at 57–58 (quoting *Hooper*, 74 N.Y.2d at 492); *see e.g., In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 340 (S.D.N.Y. 2012) ("New York law on construing indemnity agreements is essentially hostile to claims that the agreement covers attorney fees in a suit between the contracting parties"); *Stephens Inc. v. Flexiti Fin. Inc.*, No. 18 Civ. 8185, 2019 WL 2725627, at *5 (S.D.N.Y. July 1, 2019) (same); *Island Two LLC v. Island One, Inc.*, No. 13 Civ. 2121, 2015 WL 1026495, at *6–7 (S.D.N.Y. Mar. 9, 2015).

Measured against these standards, the text of the Engagement Letter falls short of that necessary to compel advancement of FT Partners' legal fees in this dispute with Plata.

In the provision at issue, Plata and FT Partners agreed that:

> [Plata] will reimburse FT Partners for its costs and expenses as they are incurred, including the fees and expenses of legal counsel, in connection with any actual or threatened action, proceeding, claim, or investigation brought by or against any person, including stockholders of [Plata], which FT Partners incurs in connection with or as a result of either engagement by [Plata] or any matter referred to in this letter agreement, whether or not FT Partners is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of [Plata]. [Plata] also will indemnify and hold FT Partners harmless against any and all losses, claims, damages, or liabilities to any such person in connection with or as a result of either engagement or any matter referred to in this letter agreement . . . .

Engagement Letter at 10.

For two principal reasons, this language does not carry the day for FT Partners.

First, this text, although broadly phrased, is also pitched at a general level. It does not convey the parties' "unmistakably clear" intent to cover (or advance) attorneys' fees in a dispute between them, as opposed to in an easily anticipable third-party action (*e.g.*, a lawsuit brought by a counterparty to a transaction of Plata's). *Hooper*, 74 N.Y.2d at 492. FT Partners emphasizes that this provision encompasses actions "brought by . . . [Plata]" and in which "FT Partners is a party." Counterclaims ¶ oo. That is true—but under the case law above applying the *Hooper* rule, such broad formulations, without more, does not signify the parties' attentiveness to, let

10

alone their intent to cover, intra-party claims. It is consistent with the broad indemnification clauses that presumptively apply *only* to third-party suits. *See, e.g., CBS Corp.*, 2010 WL 1375169, at *3 n.4 (holding that "more general indemnification provision" could not be extended to apply to non-third party suits). Notably, too, there is no provision in the Engagement Letter that addresses exclusively third-party claims—*e.g.*, a provision addressing indemnitor notice or indemnitees' defense—that might support an inference that more general language should be construed as intended to reach intra-party claims. *See Goshawk Dedicated Ltd. v. Bank of New York*, No. 6 Civ. 13758, 2010 WL 1029547, at *7 (S.D.N.Y. Mar. 15, 2010) ("broad" indemnity clause could be read to "cover" claims by contracting parties where other narrower clauses solely targeted third-party claims); *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 651–52 (S.D.N.Y.1999) (where notice-of-claim and assumption-of-defense provisions apply only to indemnity of third-party claims, broader, separate indemnification provision applied to claims by contracting parties).

Second, language elsewhere in the Engagement Letter, addressing the parties' obligations in connection with suits between them such as this, reinforces this reading. Section 10, specifically addressing disputes between the parties to the Engagement Letter, states that "[t]he prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which it may be entitled in connection with *any action to enforce this letter agreement*." *Id.* (emphasis added). Notably absent from this provision is any command that fees be advanced by Plata (or, for that matter, by FT Partners) in such actions. That textually supports that Annex A was not intended to cover such intra-party suits. Had it been so intended, it would be in tension with the different language of § 10, insofar as § 10 provided for the payment of fees to the prevailing party as between FT Partners and

Plata, whereas Annex A provided for advancement and indemnification for FT Partners only. Because a court "must read the indemnification provision in conjunction with all other provisions in the agreement to avoid inconsistencies or an interpretation which would render another provision superfluous or without effect," this provision counsels against FT Partners' reading here. *Promuto*, 44 F. Supp. 2d at 650; *see also Creative Waste Mgmt. v. Capitol Envtl. Servs.*, 458 F. Supp. 2d 178, 188 (S.D.N.Y. 2006) (indemnification clause did not cover damage claim by contracting party in part because it would render another clause meaningless).

The Court accordingly grants Plata's motion to dismiss FT Partners' counterclaim for advancement of reasonable attorneys' fees, court costs, and necessary disbursements.

**B.      Counterclaims One (Declaratory Judgment) and Eight (Breach of Implied Covenant of Good Faith and Fair Dealing)**

Plata moves to dismiss two counterclaims as duplicative of FT Partners' breach of contract claims. Motion at 15. These are Count One, seeking a declaration that, *inter alia*, the Engagement Letter remains in effect (Count I), and Count Eight, claiming that Plata breached the implied covenant of good faith and fair dealing (Count VIII). Counterclaims at 54–64. For the reasons that follow, the Court denies Plata's motion to dismiss these counterclaims.

At the motion to dismiss stage, a district court retains broad discretion not to dismiss as duplicative claims for declaratory relief or alleging a violation of the covenant of good faith and fair dealing. In particular, where discovery may bear on the viability of a claim, dismissal is not appropriate. *See Bice v. Robb*, 324 F. App'x. 79, 81 (2d Cir. 2009) (summary order); *Washington v. City of New York*, No. 18 Civ.12306, 2019 WL 2120524, at *31 (S.D.N.Y. Apr. 30, 2019) (declining to dismiss a claim until facts had been "fleshed out" in discovery); *In re Gas Reclamation, Inc. Sec. Litig.*, 659 F. Supp. 493, 504 (S.D.N.Y. 1987) (declining to

dismiss claim where there remained "issues of fact that cannot be determined on a motion to dismiss prior to discovery").

In assessing whether to sustain a declaratory relief claim, a district court is to consider whether the declaration sought (1) will serve a useful purpose in clarifying or settling the legal issues involved and (2) would finalize the controversy and offer relief from uncertainty. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Where such a claim "seeks distinct relief from a breach of contract claim, then notwithstanding some overlap between the two claims, it is not duplicative." *Personal Watercraft Prod. SARL v. Robinson*, No. 16 Civ. 9771, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (cleaned up). Put differently, a declaratory judgment claim that involves distinct "legal issues" and pursues distinct "relief" is not duplicative of a breach of contract claim. *See Dubov v. Lewis*, No. 18 Civ. 3854 (PAE), 2019 WL 1060652, at *3 (S.D.N.Y. Mar. 6, 2019); *Chiykowski v. Goldner*, No. 19 Civ. 2272, 2020 WL 2834225, at *4 (S.D.N.Y. May 31, 2020) (because breach of contract claim sought damages for publishers' alleged failure to pay advances whereas declaratory judgment claim sought declaration regarding ownership rights, the two claims were not duplicative); *cf. Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006) (declaratory judgment claim was duplicative where it sought resolution of legal issues that would "of necessity" be resolved in litigating other causes of action).

In assessing whether to sustain an implied covenant claim, under New York law, such a covenant of good faith and fair dealing is "implied" in all contracts. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) (citation omitted). A claim for violation of the covenant survives a motion to dismiss where "if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not

intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). If the conduct underlying the alleged violation of the implied covenant is also a "predicate" for the alleged contract breach, this claim will be dismissed as duplicative. *Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000).

The Court here declines to dismiss the two challenged counterclaims as duplicative. The case is at an early stage. The course of the litigation and the fate of other claims is unknowable. As to both of these counterclaims, albeit for different reasons, it is plausible that FT Partners could obtain relief that is distinct from that attainable on its contract-breach claims.

As to the claim for declaratory relief, whereas the contract-breach claim centrally seeks money damages for consummated wrongs—for Plata's failure to pay FT Partners commissions that have already accrued—its declaratory judgment claim is also forward-looking. If granted, it would establish FT Partners' right to future covered fees from Plata, and any successor or assign. *See* Counterclaims at 54 ("Plata is under a continuing obligation to pay Transaction Fees"). And where a declaratory relief claim pursues distinct relief, it is not duplicative of a breach of contract claim. *Chiykowski*, 2020 WL 2834225, at *4; *see, e.g., Novartis Pharma AG v. Incyte Corp.*, No. 20 Civ. 400, 2024 WL 3610438, at *61 (S.D.N.Y. July 29, 2024) (finding that breach of contract claim sought distinct relief from declaratory judgment because it would "resolve the question of outstanding reverse royalties, but not that of any future royalties"); *RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*, No. 10 Civ. 24, 2011 WL 3251554, at *15 (S.D.N.Y. July 28, 2011) (same as to past and future distributions).

As to the implied covenant claim, although it may prove coterminous with the contract breach claim, the pleadings leave room for it potentially to prevail on other grounds. FT Partners

14

alleges that certain "bad faith acts" comprised Plata's scheme to evade the Engagement Letter, and that these were "undertaken in bad faith to cause FT Partners to sign a termination agreement on the false pretense that a Company Sale had occurred." Counterclaims at 62. Conceivably, consistent with the pleadings, discovery may develop distinct factual bases for liability on these claims, so as to give rise to a scenario in which liability on one might not necessarily equate to liability on the other or where the implied covenant claim could focus on Plata's conduct not covered by the Engagement Letter. In these circumstances, it is sensible to leave the implied covenant claim in place for now. *See, e.g.*, *Nielsen Consumer LLC v. Circana Grp. L.P.*, No. 22 Civ. 3235, 2023 WL 5917751, at *5 (S.D.N.Y. Sept. 11, 2023) (finding New York's rule against duplicative pleading does not apply where implied covenant claim reached defendant's conduct beyond that covered by the parties' agreement); *Friedman v. Maspeth Fed. Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 195 (E.D.N.Y. July 14, 2014) (sustaining implied covenant claim where the facts underlying it were not clearly identical to those supporting the contract claim); *Tiffany Tower Condo., LLC v. Ins. Co. of Greater N.Y.*, 84 N.Y.S.3d 167, 169 (2d Dep't 2018) (sustaining viable breach of implied covenant and breach of contract claims, where the two could potentially give rise to distinct damages). Notably, Plata has not identified any practical downside to permitting the claims to coexist through to the point of summary judgment motions, or any manner in which discovery is apt to be more burdensome by the survival of the implied breach counterclaim. *See, e.g.*, *Nielsen Consumer LLC*, 2023 WL 5917751, at *5 (citing possibility of resolving contractual ambiguities through discovery as basis for permitting claim to survive at motion to dismiss); *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 585–86 (S.D.N.Y. 2024) (same); *Chery v. Conduent Educ. Servs., LLC*, No. 18 Civ. 75, 2019 WL 1427140, at *8 (N.D.N.Y. Mar. 29, 2019).

15

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plata's motion to dismiss certain of FT Partners' counterclaims. The Court dismisses Counterclaim Six, and denies the motion to dismiss Counterclaims One and Eight.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 33.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: March 13, 2026
New York, New York